ECF filed: 7/24/19

Case: 3:19-cv-00089-LRH
3:19-cv-00187-MMD

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: RONNIE C. MCKINNEY<br>JOAN E. MCKINNEY<br><br>       Debtors. | BK: 10-50597-BTB |

SETERUS, INC.,

       Appellant,

v.

RONNIE C. McKINNEY and
JOAN E. McKINNEY aka
JOAN BLAKE,

       Appellees.

# APPELLEES' OPENING BRIEF

CHRISTOPHER P. BURKE, ESQ.
Attorney for Appellees
RONNIE C. MCKINNEY
and JOAN E. MCKINNEY

# TABLE OF CONTENTS

I
TABLE OF CASES..................................................................... *ii*

II
STATEMENT OF ISSUES.............................................................. 1

III
STANDARD OF REVIEW............................................................... 1

IV
SUMMARY OF ARGUMENT ........................................................ 2

V
ARGUMENT ........................................................................ 6

A. Stay Violation.................................................................. 6

   1.   Seterus violated the stay............................................... 6

   2. Actual Damages ....................................................... 8

   3.   Punitive Damages are Appropriate for Seterus's
      Careless Actions in Violating the Stay............................. 10

B. Discharge Injunction Violation ............................................. 12

   1. Seterus violated the Discharge Injunction ......................... 12

   2. Disclaimers Do Not Relieve Seterus of its Collection Actions ...........16

   3. Loss Mitigation...................................................... 18

   4. Damages ..............................................................20

   5. Punitive Damages for Seterus's Discharge Violation........................20

C. Attorneys Fees ...............................................................21

VI
CONCLUSION........................................................................ 23

# TABLE OF CASES

*In re Ashley*, 903 F.2d 599 (9th Cir. 1990)................................................................6

*Avila v. Rubin*, 84 F.d 222 (7th Cir. 1996)........................................................ 17

*In re Bassett*, 255 B.R. 747 (9th Cir. 2002)........................................................ 20

*In re Bertuccio*, 414 B.R. 604 (Bankr. N.D. Cal. 2008)........................................8

*In re Bibolotti*, 2013 WL 2147949  (Bankr. E.D. Tex.)..............................16, 18

*In re Biery* 543 BR 267, 287 (Bankr. E.D. Kent. 2015)......................13, 15, 18

*In re Bloom* 875 F.2d 224 (9th Cir. 1989)......................................................... 10

*In re Bruce*, 2000 WL 33673773 (Bankr. MD. N.C.)..................................... 18

*In re Campion*, 294 B.R. 313 (9th Cir. BAP 2003)...........................................13

*Carey v. Piphus*, 435 U.S. 247 (1978) ...............................................................20

*Chalmers v. City of Los Angeles*, 762, F.2d 753 (9th Cir. 1985).....................20

*In re Clinton*, 449 B.R. 79 (9th Cir. BAP 2011)...............................................21

*In re Dawson*, 390 F.3d 1139 (9th Cir.2004)..............................................1, 9, 19

*In re Donnelly-Tovar*, 945 F.Supp. 2d 1037 (D.Neb. 2013) ......................15, 18

*In re Draper*, 237 BR 502 (Bankr. M.D. Fla. 1997)..........................................16

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003).............................................1, 7, 12, 21

*In re E.R. Fegert, Inc.* 889 F.2d 955 (9th Cir. 1989)...........................................3

*Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210 (9th Cir. 2002).....................8

*Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193
(9th Cir. 2008).................................................................................................12, 13

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992)......................................22

*In re Grihalva* 2013 WL 5311227 (Bankr. D. Nev.)........................................21

*In re Harlan* 402 BR 703 (Bankr. W.D. Virg. 2009)........................................................16

*In re Hernandez*, 2014 WL 5794840 (Bankr. S.D. Tex.) ...................................17

*Hunsaker v. U.S.*, No. 16-35991 (9th Cir. August 30, 2018) ...............................8

*Johnson v. Hale*, 13 F.3d 1351 (9th Cir. 1994)......................................................20

*In re Kabiling* 551 B.R. 440 (9th Cir. BAP 2016).................................................14

*In re Kritt*, 190 B.R. 382 (9th Cir. BAP 1995)........................................................6

*In re Law*, 2013 WL 4602858 (Bankr. N.D. Tex)..................................................17

*In re Mahoney,* 368 BR 579 (Bankr. W.D. Tex. 2007)........................................14

*In re Marino* 577 B.R. 772 (9th Cir. BAP 2017)..............................................3, 20

*Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003).........................11

*McCullough v. Johnson, Rodenburg & Laninger*, 637 F.3d 939
(9th Cir. 2011) ...............................................................................................................19

*In re McLean* 794 F.3d 1313 (11th Cir. 2015).......................................................19

*In re McHenry*, 179 B.R. 165 (9th Cir. BAP 1995)...........................................1, 10

*Mele v. Bank of Am. Home Loans* 486 B.R. 546 (Bankr. N.D. Ga. 2013)........................15

*In re Nash*, 464 B.R. 874 (9th Cir. BAP 2012).................................................12, 13

*In re Nordlund*, 494 BR 507 (Bankr. E.D. Cal 2011).........................................19

*In re Orian* No. CC-18-1092-SFL, 2018 WL 6187784
(9th Cir. BAP Nov. 27, 2018) ......................................................................................22

*In re Pace*, 67 F. 3d 187 (9th Cir. 1995)...................................................................7

*Passantino v. Johnson & Johnson Consumer Prods., Inc.* 212 F.3d 493
(9th Cir. 2000)................................................................................................................19

*In re Perl*, 513 B.R. 566 (9th Cir. BAP 2014)..........................................................7

*iii*

*In re Pinkstaff,* 974 F.2d 113 (9th Cir. 1992)................................................................8

*In re Ramirez*, 183 B.R. 583 (B.A.P. 9TH Cir. 1995)...................................................7

*In re Retz*, 606 F.3d 1189 (9th Cir. 2010).................................................................1

*In re Rios* 263 B.R. 382 (1st Cir. BAP 2001)..........................................................14

*In re Roman*, 283 B.R. 1 (9th Cir. BAP 2002).........................................................21

*In re Schwartz-Tallard*, 803 F.3d 1095 (9th Cir. 2015)....................................8, 9, 21, 23

*In re Snowden*, 769 F.3d 651, 661 (9th Cir. 2014).............................................9, 10

*State of Arizona v. ASARCO  LLC*, 773 F.3d 1050 (9th Cir. 2014)..........................11

*In re Taggart*, 888 F.3d 438 (9th Cir. 2018)............................................................13

*Taggart v. Lorenzen* 139 S.Ct. 1795 (2019).........................................................12, 13

*In re Todt*, 567 B.R. 667, 681-82 (Bankr. D.N.H. 2017)............................................9

*In re Tucker*, 2013 WL 3155419 (Bankr. S.D. Ga.)..................................................16

*United States v. Elliott*, 322 F.3d 710 (9th Cir. 2003)...............................................1

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009)........................................2

*In re Vanamann*, 561 B.R. 106 (Bankr.D.Nev. 2016)..............................................21

*In re Wallace*, 2012 WL 2401871 (9th Cir. BAP June 26, 2012)............................20

*Walls v. Wells Fargo Bank, N.A.* 276 F.3d 502 (9th Cir. 2002).............................21

*In re Whitaker*, 2013 WL 2467932 (Bankr. E.D. Tenn.)...........................................15

*Zhang v. Am. Gem Seafoods*, 339 F.3d 1020 (9th Cir. 2003) .............................19

*In re Zilog, Inc.*, 450 F.3d 996 (9th Cir. 2006)..................................................12, 13

## II

## STATEMENT OF ISSUES

1.      Did the Bankruptcy Court abuse its discretion in awarding actual and punitive damages to the McKinneys, because of Seterus' violation of both the automatic stay and discharge injunction?

2.      Did the Bankruptcy Court abuse its discretion in awarding attorney fees, because of  Seterus's violation of both the automatic stay and discharge injunction?

## III

## STANDARD OF REVIEW

A bankruptcy court's finding of a willful stay violation is reviewed for clear error and the awarding of damages for an abuse of discretion.  *In re Dawson*, 390 F.3d 1139, 1145 and 1150 (9th Cir.2004).  The bankruptcy court's finding of a willful violation of §524 is a factual finding reviewed for clear error. *In re McHenry*, 179 B.R. 165, 167 (9th Cir. BAP 1995).  A finding of fact is clearly erroneous if it is illogical, implausible, or without support in the record. *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010).  The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003).

An appellate court reviews a bankruptcy court's decision to impose sanctions for contempt for an abuse of discretion. *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003).  To determine whether the bankruptcy court has abused its discretion, an appellate court conducts a two-step inquiry: (1) it reviews de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical,

1

implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n. 21 (9th Cir. 2009) (en banc).

# IV

## SUMMARY OF ARGUMENT

The McKinneys moved out of their home in 2009. They surrendered that home in 2010 when they filed a Chapter 13 bankruptcy. Six years later, from 2015 to 2017, both during their Chapter 13 and after the McKinneys' discharge, Seterus sent them over 50 collection letters. Sick of this unending harassment, the Mckinneys contacted the Federal Trade Commission ("FTC"). In response, Seterus notified both the McKinneys and the FTC that it would stop sending collection letters. Despite its promise, Seterus still continued sending collection letters for another year. Therefore, the McKinneys filed a Motion for Contempt.

Pursuant to that motion, the Court held a six day evidentiary hearing. It then spent six months reviewing the evidence, along with reading the transcripts and the parties' post trial briefs. Based upon all of the evidence, the Bankruptcy Court held Seterus violated both the automatic stay and discharge injunction. As such, it awarded the McKinneys actual damages, including emotional distress damages and attorney's fees, along with a minor amount of punitive damages. Seterus timely appealed this decision.

There are at least four reasons the Bankruptcy Court's decision should be affirmed. First, Seterus's appeal did *not* provide the Court with a complete record. For instance, it *failed* to put into the appellate record *any* of the hundreds of pages of

exhibits admitted during the six-day evidentiary hearing.  Second, with the exception of making the argument, Seterus barely even addresses the Court's holding that it violated the automatic stay.  Third, its brief brings up issues not argued below.  And fourth, Seterus appealed the attorney fee award, but failed to order a transcript of that hearing. But, perhaps most astonishing, Seterus's brief includes a page of argument not regarding the McKinneys' case, but for  entirely different bankruptcy debtors!  Although this is not a basis to affirm, it shows a complete lack of care in this appeal.

Putting aside the glaring problems in Seterus's appellate record, its brief lists nine alleged issues.  However, its brief ends up only making five points.  And, as shown below, none of these points require reversal.  For instance, Seterus argues that its collection letters did not violate the law, because they were required to be sent under 12 U.S.C. §2605 and 2609 (Appellant Br. p. 11, ln.15-23).  However, this argument fails because Seterus's post-trial brief *never* made this argument.  Generally, appellate courts do not consider arguments "that are not 'properly raise[d]' in the trial courts." *In re E.R. Fegert, Inc.* 889 F.2d 955, 957 (9th Cir. 1989).  Thus, it cannot be brought up for the first time on appeal.

Besides, even if this argument was brought up below,  when such "notices were sent admidst the improper collection notices that demanded payment . . . it was no unreasonable . . . to believe that the letters [even if required] were further attempting to collect on the debt." *In re Marino* 577 B.R. 772, 785-86 (9th Cir. BAP 2017).  The

McKinneys' expert, John Rao, Esq. ("Rao")[1], is a contributing author to two chapters in the bankruptcy treatise, *Colliers on Bankruptcy*, one on the automatic stay and the other on the discharge injunction. Rao testified as to each collection letter sent by Seterus and explained which letters violated the law and why.[2] Further, Rao noted that Seterus was adding its own collection language beyond what was required by any alleged statutory requirement. In addition, he stated that by putting collection language such as, "amount due" and "payment due date," in bigger eye-catching font in its letters, Seterus was intentionally attempting to collect a debt. Obviously, such collection language confuses, harasses, and frightens consumers.

Finally, the McKinneys' expert explained that although some of Seterus's collection letters had disclaimers, it is not relevant when those disclaimers are generic and hidden, especially when the correspondence itself is also filled with collection language.

Second, Seterus argues that because it did not *call* the McKinneys to collect payment it did violate the stay or discharge injunction. However, this is a red herring, as Seterus ignores that collection calls are not the only way to violate the law. Instead, it was Seterus's never ending collection letters, littered with money-seeking terms such as, "amount due," "total due" and "payment due date" that was the basis for its sanctions.

———————————————

1. John Rao also testified that he is the author of the consumer discharge issues in the National Consumer Law publication on *Consumer Bankruptcy*. See (Ex. of Rec. '7' p. 1613 ln. 3-4); (Ex. of Rec. '7' p. 1612 ln. 14-21) and (Ex. of Rec. '8' p. 1670 ln.9-23).
2. See (Ex. of Rec. '8' p. 1663, ln. 15; p. 1692, ln. 25; p. 1693, ln. 1-16; p. 1694, ln. 1-16; p. 1727, ln. 6-13)

4

Because, as case law has made clear, it violates the stay and discharge injunction to send letters with these collection terms, when a debtor has surrendered their home and received a discharge.

Third, without *any* evidence, Seterus opines, that despite two years of constantly bombarding the McKinneys with over 50 collection statements, both during their bankruptcy case and after their discharge, the McKinneys did not suffer any emotional distress. This is preposterous, when one considers that seven years *after* the McKinneys had surrendered and moved out of the house, they were so frustrated by Seterus 's collection letters, they resorted to sending a certified letter to the FTC asking it to intervene. In their letter, the McKinneys complained of Seterus's harassment and how it was affecting them personally. In fact, Mr. McKinney even contemplated divorce, because of Seterus's relentless collection letters. These collection attempts, caused the McKinneys to erroneously believe they still owed the debt and to blame each other for it. Thus, leading to fights and almost a divorce.

Fourth, Seterus states that the Court should not have awarded punitive damages, because Seterus did not act in reckless disregard of the McKinneys' rights. However, there were two reasons the Court awarded punitive damages. One, Seterus admitted that after it boards [acquires] a loan it routinely waits a month or more to check for a bankruptcy filing. Instead of checking, it immediately sends out collection letters upon boarding. Thus, accepting the risk that it may be violating the law, as it did in this case.

In addition, even after Seterus was notified by the FTC of the McKinneys' complaint, and after Seterus wrote the McKinneys and stated it would not send anymore collection letters, it continued sending them for another year! Both actions equate to a

reckless disregard for the law.  That is why the relatively minor punitive damages were appropriate.

Finally, Seterus states that the Court erred in awarding attorneys fees because "none of the hours were broken out."  But, even a cursory look at the attorney fee application reveals five pages of time entries, broken out in tenth of an hour increments and by task.  Thus, not one of Seterus's issues on appeal has merit.  Therefore, shouldn't the Bankruptcy Court's decision be affirmed?

## V
## ARGUMENT

### A
### Stay Violation

#### 1.    Seterus Violated the Stay.

As just noted, Seterus's appeal brief makes five points.  First, Seterus's notes that the "Bankruptcy Court found there were five improper letters that were sent to the McKinneys in violation of the automatic stay" (Appellant Br. p. 17 of 31, ln.1-2).  It then adds, that "the 5 letters were not identified by the Court." *Id.*  However, this argument is meritless, since Seterus put *none* of the admitted exhibits into the record. Thus, whether they were identified by the expert or the bankruptcy court as being violative of the law, this Court could not be pointed to those documents to review.

In fact, Seterus chose not to include any of its collection letters as part of the appellate record.  As such, this court is not obligated to examine those portions of the record that are not included.  *In re Kritt*, 190 B.R. 382, 386-87 (9th Cir. BAP 1995).  In fact, an affirmance may be premised on the failure of an appellant to provide an adequate record.  *In re Ashley*, 903 F.2d 599, 605-06 (9th Cir. 1990).  Here, with *none* of

6

the admitted hearing exhibits as part of the record, the bankruptcy court's decision should be affirmed.

Besides, Seterus's collection actions violated the stay. The automatic stay arises as soon as a bankruptcy petition is filed. 11 U.S.C. § 362(a). Because the stay arises "automatically" upon the filing of a bankruptcy petition, it applies regardless of whether a party has actual knowledge or even notice that the bankruptcy proceeding was commenced. See generally 3 *Collier on Bankruptcy* §362.02 (Alan. N. Resnick and Henry J. Sommer, eds., 16th ed. 2014). The automatic stay applies to "any act to obtain possession of property of the estate. . . or to exercise control over the property of the estate." 11 U.S.C. §362(a)(3). This includes, as is the case with the McKinneys, attempts to collect money directly from a debtor.

No specific intent to violate the automatic stay is required, and thus, a good faith mistake of law or a legitimate dispute as to legal rights is irrelevant and does not relieve a willful violator of the consequences of his act. See *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003); *In re Ramirez*, 183 B.R. 583, 589 (B.A.P. 9TH Cir. 1995).

A party with knowledge of the bankruptcy proceeding is considered to have knowledge of the automatic stay. See *In re Perl*, 513 B.R. 566, 576 (9th Cir. BAP 2014), *rev'd* on other grounds, 811 F.3d 1120 (9th Cir. 2016). Instead, the moving party need only demonstrate that the creditor knew of the automatic stay, and that the creditor's actions that violated the stay were intentional. See *In re Pace*, 67 F. 3d 187, 191 (9th Cir. 1995). Here, Seterus's brief puts forth no evidence or argument that it was not aware of the stay.

Further, a violation of the automatic stay is deemed willful if the party violating it

is aware of the bankruptcy filing and takes any deliberate action that violates the stay. See *Eskanos & Adler, P.C. v. Leetien,* 309 F.3d 1210, 1215 (9th Cir. 2002), *In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir. 1992). Here, Seterus admitted it unilaterally chose to send the collection letters (Ex. of Rec. '5 ' p. 1139 ln. 16-18).

Curiously, after making the argument that it didn't violate the stay, Seterus's opening brief proceeds to state *nothing* further about it. In fact, its brief fails to even list the statute, i.e. §362, does not cite any case law in relation to the stay and makes no argument as to how the Court abused its discretion in holding Seterus violated the stay (Appellate Br. p. 9 ln. 19-20). Thus, affirmance of its stay violation is warranted.

## 2.    Actual Damages

Under Section 362(k)(1), "an individual injured by any willful violation" of the automatic stay "shall recover actual damages, including costs and attorney's fees." See *In re Bertuccio*, 414 B.R. 604, 621 (Bankr. N.D. Cal. 2008). In addition to special damages for lost wages, out-of pocket expenses and attorney's fees, actual damages for violation of the automatic stay may include general damages such as pain, suffering, and emotional distress. See *Schwartz-Tallard,* 438 B.R. at 321. It is established case law that emotional distress damages are actual damages, which compensate for the actual injury of distress. *Hunsaker v. U.S.*, No. 16-35991, slip op. at *9 n. 3 (9th Cir. August 30, 2018).

To award damages for emotional distress resulting from a violation of the automatic stay, "the injured individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct for instance, from

8

the anxiety and pressures inherent to the bankruptcy process)." *Id.*

"Emotional harm may be proved by: (1) medical evidence; (2) non-experts, such as family members, friends, or coworkers; or (3) 'even without corroborative evidence' where 'significant emotional distress [is] readily apparent.' The last category includes cases where the violator's conduct is 'egregious' or where the conduct is not egregious but the circumstances 'make it obvious that a reasonable person would suffer significant emotional harm.' . . . '" *Schwartz- Tallard* at 321-22, citing *In re Dawson*, 390 F.3d at 1149-50. The trauma experienced by the McKinneys was laid out over several days of testimony.[3] In addition to their testimony, Mrs. McKinney's son, Taylor Blake, convincingly testified as to the impact Seterus's collection actions were having on the McKinneys.[4] Based upon this, the Court awarded $5,000 (5 letters times $1,000) in emotional distress damages for Seterus's stay violation.

Seterus adds that the court had no basis in awarding $1,000 for each violation. (Appellate Br. p. 19 ln. 21-23). But the Ninth Circuit has $500 for each of 26 violation for a total of $13,000). If the overall award in previously determined that a fine of $1,000 per telephone call (for a total of $12,000) is a reasonable emotional distress award for violations of the automatic stay. *In re Snowden*, 769 F.3d 651, 661 (9th Cir. 2014). See also *In re Todt*, 567 B.R. 667, 681-82 (Bankr. D.N.H. 2017) (contemnor fined

_____

3. See (Ex. of Rec. '4' p. 0829 ln. 13-17)  (Ex. of Rec. '7' p. 1448 ln. 19, p. 1454, ln. 13-16, p. 1460, ln. 16-17 an 24-25) and (Ex. of Rec. '8' p. 1798, ln. 3-4 and ln. 9-10; p. 1809  ln.7; p. 1824, ln. 13-14)

4. See (Ex. of Rec. '3' p. 0629  ln. 19-25; p. 0630, ln. 13-19; p. 0633 ln. 21-24; 0635, ln.1-7)

this case is a bit larger than in *Snowden*, it is because the contemnor in *Snowden* only committed 12 violations.  Here, the Court found there were 21 violations overall, five of which violated the stay.  Thus, without any exhibits for the Court to review, coupled with its lack of *any* legal argument, the $5,000 stay violation portion of the damage award should be easily affirmed.

**3.    Punitive Damages are Appropriate for Seterus's Careless Actions in Violating the Stay**

In appropriate circumstances, an individual injured by a violation of the automatic stay also may recover punitive damages. 11 U.S.C. §362(k)(1)  The ultimate objective of punitive damages is to deter and punish reprehensible conduct, and thus, courts require "some showing of reckless or callous disregard for the law or rights of others."  See *In re Bloom* 875 F.2d 224, 228 (9th Cir. 1989).  Further, the recovery of punitive damages for violation of automatic stay is appropriate where the violator has engaged in egregious, intentional misconduct.  See *In re McHenry*, 179 B.R. 165, 168 (9th Cir. BAP 1995).  Here, Seterus argues it did not act in reckless disregard of the McKinneys' rights (Appellant Br. p. 25 of 31, ln. 22-23).  Therefore, the Court erred in awarding minor punitive damages.

However, Seterus was on notice of the McKinneys' bankruptcy, yet still sent numerous collection letters while their Chapter 13 case was in progress, i.e. a stay violation.  It is Seterus's policy to wait a month or more *after* boarding a loan to check

for a bankruptcy.[5]  However, there are consequences to such a policy of waiting. Further, Seterus also admitted *it never* changes its collection statements, whether someone files bankruptcy or not (Ex. of Rec. '5' p. 1108 ln. 20-23).  Thus, the *same* monthly collection statement goes out to all of its customers, regardless of their circumstances (Ex. of Rec. '9' p. 2032  ln. 22-24).

Seterus admitted the reason it delays initially checking for a bankruptcy when it boards a loan.  Apparently, it is not "costs effective" and "not a primary concern."  (Ex. of Rec. '6' p. 1275  ln. 11-12 and p. 1378, ln. 15).  In line with its practice, it was not surprising that Seterus waited more than a *month*, after boarding the McKinneys' loan to check Aacer.[6]  During that time, Seterus sent at least ten (10) letters to the McKinneys, at least five of which the Court found sought money in violation of the stay.

Based upon these actions, or Seterus's inaction, the Bankruptcy Court awarded a modest $10,000 in punitive damages  (Ex. of Rec. '9' p. 2032  ln. 7-14).  When in fact,  it is permissible for an award of punitive damages to far exceed the amount of actual damages awarded.  See, e.g. *State of Arizona v. ASARCO  LLC*, 773 F.3d 1050 (9th Cir. 2014) (affirming award of $300,000 in punitive damages with $1 in nominal damages); *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003) (affirming award of $186,000 in punitive damages with $5,000 in compensatory damages).  Thus, all damages awarded for Seterus's stay violation should be affirmed.

_____

5. See (Ex. of Rec. '6' p. 1363, ln. 15-20; p. 1364, ln. 2-3; p. 1368, ln. 16-18; p. 1369, ln. 13-15;
    p. 1378, ln. 6-11)
6. See (Ex. of Rec. '5' p. 1195, 4-12 and p. 1196, ln. 1-3 and 16-18) and (Ex. of Rec. '6' p. 1368,
    ln. 16-18 and p. 1369, ln. 13-15)

**B**

**Discharge Injunction Violation**

**1.     Seterus Violated the Discharge Injunction**.

Second, the Bankruptcy Court correctly held Seterus violated the discharge injunction.    The bankruptcy discharge "operates as an injunction against the commencement or continuation of an action . . . or an act, to collect, recover or offset any  such debt as a personal liability of the debtor. . ." 11 U.S.C. §524(a)(2).

A moving party must prove by clear and convincing evidence that the offending party violated the discharge order *In re Zilog, Inc.*, 450 F.3d at 1007; *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003).  The moving party also has this same burden to prove that sanctions are justified.  *Espinosa*, 553 F.3d at 1205 n.7.  Here, both burdens were met.  Once a bankruptcy court finds that a party has willfully violated the discharge injunction, it may award actual damages, punitive damages, and attorneys' fees to the debtor.  *In re Nash*, 464 B.R. 784, 880 (9th Cir. BAP 2012)(citing *Espinosa*, 553 F.3d at 1205 n.7 (citing 2 *Collier Bankruptcy Manual* ¶524.02[2][c] (3d rev. ed.))

In its opening brief, Seterus argues it did not violate the discharge injunction, because when viewed objectively, there is fair doubt whether its conduct was lawful in relation to its discharge violations.  *Taggart v. Lorenzen* 139 S.Ct. 1795, 1801 (2019) (Appellant Br.  p. 7  ln. 17-21).  But, Seterus's appeal of the discharge violation portion of the award, simply fails to provide a basis to reverse.

To be subject to sanctions for violating the discharge injunction, a party's violation must be "willful."  The Ninth Circuit applies a two-part test to determine whether the willfulness standard had been met: (1) did the alleged offending party know

that the discharge injunction applied: (2) and did such party intend the actions that violated the discharge injunction? *In re Nash*, 464 B.R. at 880 (citing *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1205 n.7 (9th Cir. 2008), *aff'd*, 130 S.Ct. 1367, (2010);  *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006).

As to the first prong, the Bankruptcy Court held that Seterus violated the discharge injunction, even under the Ninth Circuit's greater standard found in *In re Taggart*, 888 F.3d 438, 444 (9th Cir. 2018).  In *Taggart,*  a creditor which had a good faith belief that the discharge order did not apply to them, was allowed to escape liability.  However, the U.S. Supreme Court recently reversed and remanded the *Taggart* decision.  See *Taggart v. Lorenzen* 139 S. Ct. 1795 (2019).  The Supreme Court held, that instead of the Ninth Circuit's subjective standard, the correct standard is "if there is no fair ground of doubt as to whether the order barred the creditors' conduct." *Id* at 1801. In other words, civil contempt may be appropriate if there is not an objectively reasonable basis for concluding that the creditors conduct might be lawful. Thus, making it easier to prove contempt for a discharge violation.

"Whether sending a Billing Statement is an enjoined act to collect a personal liability, or a permissible request for periodic payment in lieu of pursuing in rem relief, cannot be a question of a creditor's subjective purpose.  Rather, it depends solely on the purpose for which the statement appears to have been sent, as assessed from the four corners of the document.  *In re Biery* 543 BR 267, 287 (Bankr. E.D. Kent. 2015).

Therefore, *Taggart* does not affect the well-developed case law holding that a sophisticated institutional creditor cannot avoid contempt by failing to implement effective procedures to track bankruptcy cases.  See, e.g. *In re Campion*, 294 B.R. 313

13

(9th Cir. BAP 2003); *In re Rios* 263 B.R. 382 (1st Cir. BAP 2001). Seterus's cavalier attitude toward the discharge injunction gave fertile reason for the Bankruptcy Court's sanctions. Thus, the first prong is met.

As for the second prong, the contemnor must have intended the action that violated the injunction. "The focus is on whether the creditor's conduct violated the injunction and whether that conduct was intentional; it does not require a specific intent to violate the injunction." *In re Kabiling* 551 B.R. 440, 445 (9th Cir. BAP 2016). "What is relevant is not the intent to violate the discharge, but rather the intent to commit the act that violated the discharge injunction." *In re Mahoney*, 368 BR 579, 587 (Bankr. W.D. Tex. 2007). Here, Seterus never denied it intentionally sent the McKinneys its collection letters. Further, it admitted that neither the McKinneys nor their bankruptcy attorney requested these collection letters (Ex. of Rec.'5' p. 1139, ln. 13-18 and p. 1142 ln. 1-4 and 10-12 ). Thus, with both prongs met, the Bankruptcy Court's holding that Seterus violated the discharge injunction should be affirmed.

Further, as noted earlier, Seterus failed to put into its appellate record the hundreds of pages of collection letters and correspondence admitted into evidence that were sent *after* the McKinneys' discharge. This deficiency alone is a basis to affirm. Even if, that deficiency could be overcome, Seterus's arguments fail to do that.

For instance, Seterus's brief states it did not *call* the McKinneys (Appellate Br. p. 13 ln. 13-14). So what? Calling is not the only way to collect a debt! Instead, Seterus chose to continuously use the mail to collect from the McKinneys.

Then, Seterus argues it was required to send some correspondence. Although a borrower is supposed to be notified of any escrow shortages, those statutes say nothing

14

about sending a collection letter to a debtor who had moved out and surrendered their home six years earlier.  Further, those escrow statutes say nothing about adding collection language such as "total payment" and "you are still responsible" for the debt along with attached payment coupons.  Especially when, these same letters also seek a substantial payment.  *In re Donnelly-Tovar*, 945 F.Supp. 2d 1037, 1047 (D.Neb. 2013) (FDCPA).  Thus, Seterus violated the discharge injunction by attempting to collect from the McKinneys post-discharge.

Seterus's brief argues that Fannie Mae requires it to send some correspondence (Appellate Br. p. 14 ln. 3-4). However, even if that is a contractual relationship between those two, what Fannie Mae desires is not a statutory requirement.  And it is nothing the McKinneys agreed to.  "[W]hen a post-discharge communication facially demands repayment of a discharged debt, *no* court has held it must inquire into whether the demand was effective to determine whether the demand is an enjoined act." *Biery* at 289. "[T]his has no bearing on whether the act itself violated the discharge injunction." *Id.*

In fact, Billing Statements cease to "serve an information purpose if sent after a foreclosure." *In re Whitaker*, 2013 WL 2467932, at *8-9 (Bankr. E.D. Tenn. June 7, 2013).  The same can be said when a party has moved out of their home years earlier, surrendered it in bankruptcy and received a discharge.

Finally, Seterus cites to some cases that permit correspondence after a discharge. Unfortunately, Seterus does not inform this Court that in those cases, the debtors were *keeping* the property.  See *Mele v. Bank of Am. Home Loans* 486 B.R. 546 (Bankr. N.D. Ga. 2013).  Thus, Seterus's collection correspondence violated the discharge injunction

15

and the Court's decision should be affirmed.

**2. Disclaimers Do Not Relieve Seterus of its Collection Actions**.

Next, Seterus attempts to avoid liability arguing it provided disclaimers (Appellant Br. p. 12  ln. 21-24 and p. 13, ln. 2-5).   However, disclaimers do not insulate them from liability.  First, the disclaimers are hidden.  See *In re Harlan* 402 BR 703, 716 (Bankr. W.D. Virg. 2009). (Statements that demanded payment, but contained a second page disclaimer amounting to "two inconspicuous sentences in fine print hidden within paragraphs of text," violated the discharge).  Second, they are generic and state, "*If you received a bankruptcy discharge*."  This type of vague general wording does not protect a creditor from sanctions.  See *In re Tucker*, 2013 WL 3155419 at *3 (Bankr. S.D. Ga.) (Statement containing a conditional disclaimer to the effect that *if* the recipient was in bankruptcy, the statement was for informational purposes, but that referred to payments as due throughout violates the discharge); *In re Bibolotti*, 2013 WL 2147949 at *14 (Bankr. E.D. Tex.) (The disclaimer language is not conspicuously located if at the end of a letter or on the second page and is not distinguishable in any way from the other text contained in the letter).

Thus, the existence of disclaimer language will not serve to insulate an otherwise improper demand for payment. *In re Draper*, 237 BR 502, 505 (Bankr. M.D. Fla. 1997) (monthly invoices that set forth the *amount of payments past due* and asked the debtor to remit this amount were geared toward collection of a debt, notwithstanding a paragraph that acknowledged the debtors' bankruptcy and stated that the invoice was being sent for informational purposes only).  Courts have noted, when "AMOUNT NOW DUE" and "LAST DAY FOR PAYMENT" [are] screamed in all capital letters . . . while at

16

the same time having more subtle references to . . . rights possibly being limited by her bankruptcy [it] is confusing at best . . ." *In re Law*, 2013 WL 4602858* at 6 (Bankr. N.D. Tex). Besides, the vast majority of courts have held that a statement violates the discharge injunction when its collection letters include, both payment demands and an inconspicuous disclaimer. *In re Hernandez*, 2014 WL 5794840 at *3 (Bankr. S.D. Tex.).

Ironically, these disclaimers are there whether someone files bankruptcy or not.[7] But notably, Seterus's generic statements add that its records indicate the loan obligation "may have been discharged or is subject to any automatic stay of bankruptcy order," without stating which of those alternatives apply. Thus, Seterus is admitting it did not even bother to check and see if the McKinneys filed bankruptcy, and properly address its status *before* its collections letters. When presented with these contradictory and inconsistent statements, an unsophisticated consumer would be uncertain of the nature and amount of debt she actually owed, unaware of the consequences of either payment or nonpayment, and would be left "scratching [their] head upon receipt of such a letter." See, e.g., *Avila v. Rubin*, 84 F.d 222, 226 (7th Cir. 1996).

As one court noted, the creditor's "argument . . . is disingenuous, if not specious. Its characterization of the correspondence as a simple attempt to offer the plaintiff an opportunity to obtain a release of the lien is similarly untenable. The letter clearly asks for a substantial amount of money. An unsophisticated consumer would reasonably assume there was some sort of obligation connected to the request. A fair reading of the

---

7. See (Ex. of Rec. '5' p. 1246 ln. 14-25 and p. 1247, ln. 1-6) and (Ex. of Rec. '6' p.1288, ln. 3-4).

letter shows that [Seterus] misrepresents the character or amount of plaintiff's debt and fails to comply with other requirements." *Donnelly-Tovar* at 1048.

Further, the mailing of mortgage loan statements that refers a debtor to attached payment coupons with the "current due date" is a violation of the discharge injunction, despite the inclusion of language that the statement was not a demand for payment. *In re Bruce*, 2000 WL 33676733 at *3 (Bankr. MD. N.C.). "[F]or a statement to have a valid information purpose, in lieu of seeking in rem relief, the statement must announce the purpose on its face, in sufficiently clear language such that an ordinary consumer debtor receiving the statement would understand its information and voluntary purpose." *Biery* at 287.

Seterus "makes a mockery of the discharge injunction . . . [under its view] a debtor is completely unprotected by the discharge injunction from dunning letters so long as he 'specifically knew that notwithstanding a purported demand for payment. . . he had no obligation to make a payment.'" *Biery* at 288.  Here, Seterus's collection letters made the McKinneys believe they still owed on its discharged debt.

## 3.    Loss Mitigation

Finally, Seterus's argument that it was only trying to offer loss mitigation options to the McKinneys also rings hollow (Appellant Br. p. 14 ln. 21-26 ).  "[T]he constant communication regarding 'loss mitigation' options, and the ARM Notices that continued to remind [debtor] of the *changing interest rate, payment amount, payment due date, and outstanding principle balance due*, . . . is a larger course of conduct intended by [creditor] to coerce [debtors] into 'voluntarily making payments or entering into a loan modification, or other repayment plan with [creditor]." *In re Bibolotti*, 2013 WL

2147949 at *14 (Bankr. E.D Tex.).  That is the exact scenario in this case.

As noted in *Nordlund*, the shear *volume* of mail overwhelmingly sought payment from the McKinneys.  "Taken together, in context, the Court construes the 24 letter as a deliberate attempt by the [creditor] to sow confusion and doubt as to whether it would recognize the debtors' discharge."  *In re Nordlund*, 494 BR 507, 519 (Bankr. E.D. Cal 2011)(award $24,000 plus attorney fees).

Actual damages can include emotional distress damages for an automatic stay violation.  See *In re Dawson*, 390 F.3d 1139, 1148 (9th Cir. 2004).  Courts also have the authority to award emotional distress damages for a discharge violation.  See *In re McLean*, 794 F.3d 1313, 1325 (11th Cir. 2015).

Seterus's brief argues that the emotional distress award was based on what it characterized as "self-serving statements" from the McKinneys themselves, and that the emotional distress of its discharge violations cannot be easily separated from the distress inherent to the financial problems that led the McKinneys to declare bankruptcy in the first place. (Appellate Br.  p. 18, ln. 9-10).  In doing so, Seterus dredges up events from years earlier.

However, the Ninth Circuit has accepted emotional distress damages based solely on the testimony of the affected victim(s) and other witnesses on multiple occasions. See  *Zhang v. Am. Gem Seafoods*, 339 F.3d 1020, 1040 (9th Cir. 2003) ("Zhang's testimony alone is enough to substantiate the jury's award of emotional distress damages" of $360,000); *Passantino v. Johnson & Johnson Consumer Prods., Inc.* 212 F.3d 493, 513 (9th Cir. 2000) (upheld $1,000,000 emotional distress damages and $2,200,000 in economic damages); *McCullough v. Johnson, Rodenburg & Laninger*,

637 F.3d 939, 957 (9th Cir. 2011) (upheld $250,000 emotional distress damages under the FDCPA); *Chalmers v. City of Los Angeles*, 762, F.2d 753, 761 (9th Cir. 1985) (upholding emotional damages solely on testimony); *Johnson v. Hale*, 13 F.3d 1351, 1352 (9th Cir. 1994) (noting that emotional distress damages may be awarded based on testimony alone or appropriate inference from circumstances); *Carey v. Piphus*, 435 U.S. 247, 264, n.20 (1978) (emotional distress damages are "essentially subjective" and may be proven by reference to injured party's conduct and observations by others.).

**4.   Damages**

The bankruptcy court has broad discretion in fashioning a remedy for violation of the discharge injunction.  *In re Bassett*, 255 B.R. at 758.  *In re Wallace*, 2012 WL 2401871 at *5 (9th Cir. BAP June 26, 2012). Here, the Bankruptcy Court properly awarded the McKinneys emotional distress damages for five (5) post-discharge, pre-FTC collection letters for $5,000 (5 letters x $1,000).  It also upped the sanction to $22,000 (11 letters x $2,000) for the eleven (11) post-discharge collection letters sent *after,* the FTC became involved and Seterus promised not to send anymore collection letters.

In line with these amounts, the Ninth Circuit BAP recently affirmed a $1,000 per letter and $1,000 per call amount in emotional distress damages for a discharge violation.  *Marino* 577 B.R. at 787 (affirming $119,000 in compensatory damages).

Finally, and confusingly, Seterus devotes on full page arguing about the damages awarded in a completely different bankruptcy case, as if it was the case before this Court???  (Appellant Br. p. 27 of 31, ln. 10-27 and p. 28 of 31, ln. 1-8).

**5.   Punitive Damages for Seterus's Discharge Violation**.

A bankruptcy court's civil contempt authority under Section 105(a) is limited to

relatively mild, non-compensatory fines rather than serious punitive sanctions.  See *Dyer*, 322 F. 3d at 1193.

A bankruptcy court can award relatively minor punitive damages for a discharge violation.  Here, the Court *only* awarded $10,000 in punitive damages.  This is perfectly in line with another Nevada bankruptcy judge.  See *In re Grihalva* 2013 WL 5311227 * at 6 (Bankr.D. Nev.) (imposing $10,000 fine when lender violated the discharge injunction).  Thus, this amount should be affirmed.

## C
### Attorneys Fees

An appellate court reviews a bankruptcy court's award of attorney's fees as a component of §362(k) damages for an abuse of discretion. *In re Roman*, 283 B.R. 1, 7 (9th Cir. BAP 2002).  See also *In re Schwartz-Tallard*, 803 F.3d 1095, 1101 (9th Cir. 2015) (courts awarding fees under §362(k) retain the discretion to eliminate unnecessary or plainly excessive fees).  An award of attorneys' fees is also an appropriate component of a civil contempt award.  See *Walls v. Wells Fargo Bank, N.A.* 276 F.3d 502, 507 (9th Cir. 2002).  Thus, the same standard is in place for attorneys fees awarded for a discharge violation, which can be awarded under §105(a).  *In re Vanamann*, 561 B.R. 106, 131 (Bankr.D.Nev. 2016).

To start with, despite opposing the McKinneys' attorney fees, Seterus *fails* to put into the appellate record the transcript from the attorney fee hearing.  That alone, is a basis to affirm the Bankruptcy Court.  *In re Clinton*, 449 B.R. 79, 83 (9th Cir. BAP 2011) ("Without a transcript, it is impossible to determine why the bankruptcy court ruled as it did.  Therefore, we have little choice but to exercise our discretion and summarily affirm

the bankruptcy court's decision.")

Second, the bankruptcy court has broad discretion in determining what fees are reasonable under the circumstances. *See Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992) ("The district court has a great deal of discretion in determining the reasonableness of the fee and, as a general rule, we defer to its determination. . ."). An appellate court is to afford "considerable deference to the bankruptcy court's reasonableness assessment because of its first-hand experience with the attorneys' services and performance during the course of the bankruptcy proceedings." *In re Orian* No. CC-18-1092-SFL, 2018 WL 6187784, at *8 (9th Cir. BAP Nov. 27, 2018) (citations omitted).  Under this standard, Seterus has not carried its heavy burden to persuade anyone that the bankruptcy court abused its discretion in awarding attorneys fees.

A simple look at Seterus's opposition to attorneys fees, shows it failed to object to *any* specific entry in the attorney fee application. (Ex. of Rec. '9' p. 2049-52).  In addition, it provided no expert declaration disputing the McKinneys' attorney hourly rate.  A rate that has been approved by *every* bankruptcy judge in Nevada.  (Ex. of Rec. '9' p.2059).  Further, Seterus questions "how the accuracy of the information was confirmed" (Appellant Br. p. 21  ln.15).  In the process, it ignores the declaration of C. Burke which declares that the fee application verifies and delineates his hours in great detail (Ex. of Rec. '9' p.2034-35 and 2056-57).  Also, Seterus disingenuously states "it is impossible to tell how much of these attorneys fees were incurred in litigating against Citimortgage, Inc." (Appellant Br. p. 21  ln.14-15). The problem with this argument is two-fold.  First, besides the fact that Citimortgage settled this case early on, the motion

22

continuously states its against Seterus (Ex. of Rec. '9' p.2036,  ln. 18, p. 2040, p. 2056 ln. 19-26 and p. 2059, ln. 1-24).  Second, the hours and fees are cut in half, on the few occasions where there is overlap between the two creditors. (Ex. of Rec. '9' p. 2040).

Finally, the statute allows for attorneys fees, because the legislative plan can only be carried out "if injured debtors are actually able to sue to recover the damages that §362(k) authorizes." *Schwartz-Tallard* at 1100.  "Congress undoubtedly knew, that unless debtors could recover attorneys' fees they incurred in prosecuting an action for damages, many would lack the means or financial incentive (or both) to pursue such action." *Id.*  Thus, the reasonable attorney fees awarded for the six-day evidentiary hearing should be affirmed.

## VI

### CONCLUSION

Seterus's appellate brief provides no basis to reverse the Bankruptcy Court.  First, Seterus should not be rewarded for its failure to provide this Court with a *complete* record, which alone is a basis to affirm.  Second, the Bankruptcy Court followed the law in correctly holding Seterus violated both the stay and discharge injunction.  Thus, Seterus never comes close to proving an abuse of discretion or clear error. Finally, the sanctions and attorneys fees were reasonable. Therefore, shouldn't the Court's entire holding be affirmed?

DATED this 24TH  day of July 2019.          _____

/S/CHRISTOPHR P. BURKE, ESQ.
CHRISTOPHER P. BURKE, ESQ.
Attorney for Appellees

23

CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of July, 2019, I caused the above and

foregoing APPELLEES' OPENING BRIEF to be sent by electronic notice and depositing

same in the United State Mail, first class, postage prepaid, in a securely sealed envelope

and addressed to the last known address of the following:

Edgar C. Smith, Esq.
WRIGHT, FINLAY & ZAK LLP.
7785 W. Sahara Avenue, Ste. 200
Las Vegas, Nevada 89117

Email: esmith@wrightlegal.net


 /S/ Kimberly Wilson
Employee of
Christopher P. Burke, Esq.